UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| MARJORIE DIAZ,<br><br>*Plaintiff*,<br><br>v.<br><br>TIMOTHY C. WARD, Commissioner,<br>Georgia Department of Corrections,<br><br>TREVONZA BOBBITT,<br>Warden, Georgia State Prison,<br><br>VALDERINE JACKSON,<br>Deputy Warden, Georgia State Prison,<br><br>JOHN DOES 1-10, Officials,<br>Georgia State Department of Corrections,<br><br>*Defendants*. | CIVIL ACTION<br>FILE NO. _____<br><br><br><br>COMPLAINT WITH JURY DEMAND |

## COMPLAINT FOR DAMAGES

### INTRODUCTION

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 arising

from the murder of Adrian White ("Mr. White" or "Decedent") by an inmate

under the supervision of the Georgia Department of Corrections ("GDC") at

Georgia State Prison on December 3, 2019.

Plaintiff Marjorie Diaz ("Ms. Diaz" or "Plaintiff") respectfully files this

Complaint and Demand for Jury Trial against Defendants Timothy C. Ward

("Ward" or "Defendant Ward"), Trevonza Bobbitt ("Bobbitt" or "Defendant Bobbitt"), Valderine Jackson ("Jackson" or "Defendant Jackson"), and Officers John DOE 1-10.  Plaintiff alleges as follows:

1. Mr. White was placed in the same cell as a dangerous and mentally disturbed felon, Shawn Mosely, who had a history of drug abuse while incarcerated, carrying homemade weapons and stabbing other inmates.  Georgia State Prison officials were aware of this history – indeed, nine months prior to placing this inmate into a cell with Mr. White, inmate Mosely had stabbed and nearly killed another inmate in his cell.

2. On December 3, 2019, inmate Mosely stabbed and killed Mr. White with a homemade weapon. Mr. White's murder is the direct consequence of deliberate indifference on the part of GDC personnel ranging from the GDC Commissioner to the correctional officers in the pod in which Mr. White was killed.

3. Mosley was criminally prosecuted for the murder of Mr. White. He was convicted of felony murder and related offenses after trial on February 18, 2022.

4. The GDC Commissioner was on notice that understaffing, poor supervision, and the inadequate provision of mental care to inmates had resulted in a surge in inmate-on-inmate violence.  For years prior to Mr. White's murder, numerous investigative reports and even an internal GDC audit had warned

that reform was needed to reduce inmate violence.  No meaningful steps were taken.

5. Due to a lack of training and supervision, a failure to make timely security rounds and call checks, the failure to properly search the offending inmate, and an institutional indifference to the risks of placing violent offenders in shared cells, Mr. White lost his life.

## PARTIES

6. At all relevant times, Adrian White, Jr. was an inmate at Georgia State Prison.

7. Plaintiff Marjorie Diaz was the wife of the Decedent. They were married on July 1, 2013. She seeks both survival and wrongful death damages under federal and state law.

8. Defendant Timothy C. Ward has, at all relevant times, been the Commissioner of the Georgia Department of Corrections.  He is sued in his individual capacity.

9. Defendant Trevonza Bobbitt has, at all relevant times, been the Warden of Georgia State Prison. He is sued in his individual capacity.

10. Defendant Valderine Jackson has, at all relevant times, been the Deputy Warden of Security at Georgia State Prison. She is sued in her individual capacity.

11. Defendants Correctional Employees John DOE 1-10 were, at all relevant times, employed at Georgia State Prison or the Georgia Department of

3

Corrections and were responsible for the placement of the Decedent in the cell as Mosely. The true names of defendants DOE 1-10, inclusive, are unknown to Plaintiff, who therefore sue these defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained.

## JURISDICTION AND VENUE

12. This civil action is brought for the redress of deprivations of constitutional rights as protected by 42 U.S.C. § 1983 and § 1988, the Eighth and Fourteenth Amendments of the United States Constitution, and Georgia state law.

13. This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1343 (a)(3) and (4). Moreover, this Court has supplemental jurisdiction, under 28 U.S.C. § 1367, over the state law claims as they are part of the same case or controversy under Article III of the United States Constitution.

14. Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in this district.

15. Adrian White was murdered by Shawn Mosley on December 3, 2019. A criminal prosecution against Mosely was instituted in and around 2020. He was tried and convicted of the murder on February 18, 2022. Thus,

4

pursuant to O.C.G.A. §9-3-99, the statute of limitations in this matter has been tolled pending the prosecution of this matter.

## FACTS

**History of Violent Infractions by Inmate Mosley which put Defendants on Notice of the Danger He Posed to Other Inmates**

16. Prior to and at the time of inmate Mosley's attack on Adrian White, the following incidents were recorded in inmate Mosely's history as a prisoner in the GDC system and known to all Defendants:

   a. On November 23, 2019, inmate Mosely, along with three other inmates, stabbed another inmate twice in the neck, stole his property, and threatened to kill him.

   b. On or around February 17, 2019, inmate Mosely viciously stabbed another inmate with whom he shared a cell with a homemade shank, which he flushed down the toilet when correctional officers arrived. According to his victim, inmate Mosely had shown signs of mental disturbance before the stabbing. This inmate reported that Mosley's attack was unprovoked.

   c. On January 30, 2019, a random cell search of inmate Mosley's cell uncovered a series of contraband items, including a "metal pip approx. 12 inches in length with a homemade cloth handle."

   d. On January 15, 2019, inmate Mosley was involved in an incident at Ware State Prison that involved his possession of contraband,

including his possession of methamphetamine and two homemade weapons.

e.  On January 2, 2019, inmate Mosley was involved in an incident at Ware State Prison that involved his possession of prohibited contraband, including cellular phones, two pieces of prohibited metal, and four homemade weapons.

f.  On December 23, 2015, inmate Mosley was involved in an incident at Macon State Prison involving the possession of prohibited contraband.

a.  On September 8, 2015, inmate Mosley was involved in an incident at Macon State Prison involving the possession of prohibited contraband, including cellular phones and seven weapons.

b.  On February 11, 2014, inmate Mosley was involved in an incident at Macon State Prison involving the possession of 14 homemade weapons.

c.  On May 6, 2013, inmate Mosley was involved in an incident at Macon State Prison involving the stabbing of another inmate.

d.  On December 8, 2011, inmate Mosley was involved in an incident at Smith State Prison involving the possession of prohibited contraband, including a homemade weapon and cellular phones.

e. On July 20, 2011, inmate Mosley was involved in an incident at Smith State Prison involving a physical altercation with another inmate.

f. On June 16, 2011, inmate Mosely was discovered to have been in possession of a contraband razor blade after accidentally injuring himself.

g. On February 17, 2010, inmate Mosley was involved in a physical altercation that resulted in the head of another inmate being forced through the window of the control panel in the dormitory where he was housed.

h. On November 25, 2009, inmate Mosley was involved in an incident at Ware State Prison involving the stabbing of another inmate.

17. Defendants were well aware of inmate Mosley's gang affiliations and his propensity toward violence against other inmates, his ability to readily procure prohibited contraband and weapons, his propensity to deal and use illegal drugs inside the prison, his routinely obtaining tattoos while in prison with a tattoo gun, and his postings to social media with unauthorized cell phones because much of this behavior was widely publicized in the local news.[1] See Exhibit A.

---

[1] In September of 2015, CBS 46 News published two stories spotlighting gangs and contraband in Georgia's prisons. Both stories *specifically featured inmate Mosely* as the poster child for using and

18. As evidenced in the news articles about inmate Mosley, Defendants knew that he referred to himself as "ruthless"; used and sold drugs in prison; and posed a significant threat to the safe operation of GDC prisons, GDC officers and staff, and GDC inmates.

19. Clearly, Defendants were aware of inmate Mosley's history within the GDC and that he posed a high risk to the safety Mr. White and to other inmates.

**Inmate Mosley's Attack on Adrian White**

20. Despite inmate Mosley's long history of possessing weapons and assaulting fellow inmates, inmate Mosely was placed in a cell with Mr. White.

21. On December 3, 2019, while in their shared cell, inmate Mosely killed Mr. White by stabbing Mr. White repeatedly about his body, face and head.

**Violation of Policy**

22. Defendants were aware of inmate Mosley's practice of carrying homemade weapons and his tendency to violently assault cellmates. A mere nine months earlier, while in the "hole" with another prisoner, inmate Mosley stabbed his cellmate repeatedly in the face, head, and neck with a knife.

23. Defendants were also aware that inmate Mosely was mentally disturbed. The cellmate who survived the February 2019 stabbing reported that inmate

selling drugs and other contraband inside the prison, seemingly with impunity. See Exhibit A.

Mosely had exhibited bizarre behavior prior to the stabbing, including talking to himself about angels and demons.

24. Inmate Mosley's history of violence required that he be placed in the highest level of segregation and supervision pursuant to the Georgia Department of Corrections Standard Operating Procedure Policy No. 209.08, which serves to protect both prison staff as well as other inmates.

25. When placed in Tier II or III Segregation, inmates are placed in the most restrictive cells available when those inmates have a history of being violent and aggressive.

26. Upon being placed in a cell, inmates in Tier II or III Segregation are required to be checked every thirty (30) and fifteen (15) minutes, and guards are required to complete 30-minute/15-minute Watch Form/Observation Records.[2]

27. Inmate Mosley was or should have been placed in Tier II or III Segregation.

28. As an inmate in Tier II or Tier III Segregation, inmate Mosley should have been checked in his cell more regularly than regular inmates in segregation. The need to conduct cell checks was heightened by inmate Mosley's history of carrying homemade weapons.

29. Defendants were obligated by GDC policy to ensure regular and timely checks of inmate Mosley – whether in a regular cell or while in

---

[2] Georgia Department of Corrections, Standard Operating Procedure, Policy No. 209.08(IV)(P)(3).

administrative segregation.  Due to inmate Mosley's known serious violent and repetitive history while in the custody of the GDC, those checks should have occurred more regularly and in accord with GDC policies for inmates in Tier II or III segregation.  The need for more regular checks of inmate Mosley's cell was heightened by the fact that he was double bunked with Mr. White.

30. Defendants failed to adhere to GDC policy with respect to double-bunking inmates with extensive histories of violence and conducting regular and timely room checks.  Specifically, Defendants John DOE 1-10 deliberately failed to make timely room checks with regard to inmate Mosely.

31. Defendants also failed to ensure that inmate Mosley was properly searched for contraband and other weapons prior to being double-bunked with Mr. White.

32. Had Defendants John DOE 1-10 ensured regular and timely room checks, inmate Mosley's attack on Mr. White would have been either stopped, and aid medical would have been rendered sooner.

33. The failure of Defendants John DOE 1-10 to perform regular and timely room checks was the actual and proximate cause of Mr. White's murder.

### History of Violence and Inadequate Mental Care

34. GDC prisons, in general, and Georgia State Prison, in particular, have been the subject of numerous reports and investigations documenting a history of inadequate mental health treatment, inadequate staffing and training, and

generalized neglect – all of which has led to an upsurge in inmate violence. Defendants were required to take specific actions to address these issues in an effort to help ensure the safety of inmates in GDC custody but did nothing.

35. According to a report by the Southern Center for Human Rights, more inmates were murdered in the first eight months of 2020 than in any single year between 2014 and 2018.  In the summer of 2020, there were large-scale riots at multiple GDC facilities due to a combination of deplorable conditions and chronic understaffing.

36. According to that same report, as of June 2020, there was a 30% vacancy rate for correctional officer positions throughout the GDC. At Georgia State Prison, the vacancy rate is in excess of 50%.

37. These problems preceded the murder of Mr. White – the fact that they got worse after that murder is further evidence of deliberate indifference on the part of GDC officials and the Georgia State Prison leadership to the safety of inmates.

38. As a result of chronic understaffing, poor training, and inadequate supervision, there has been a spike in suicides – with at least eight documented suicides in Georgia State Prison between September 2019 and August 2020.

39. Men with serious mental illnesses – such as inmate Mosley – are kept in conditions that exacerbate their violent tendencies, including being locked

in their cells around the clock for weeks at a time. A 2018 report authored by the GDC's own Office of Health Services warned that Georgia State Prison's mental health services were severely lacking, were contributing to the "emotional and cognitive" decompensation of inmates, and that GDC could face legal consequences for its failure to address the problem. GDC officials have consistently failed to take any concrete steps to address these deficiencies. In fact, suicide rates at the prison have increased since the 2018 audit.

40. It was entirely foreseeable that, as a direct result of Defendants' deliberate indifference toward inmates with mental illnesses, inmates like Mosely would become more violent. And it was foreseeable that allowing inmates like Mosely with dangerous mental disorders to mingle in the general prison population would put other inmates at risk.

41. The highest echelons of GDC – including Defendants Ward and Bobbitt – were on notice prior to Decedent's death that understaffing, poor training, and general neglect had resulted in a significance increase of inmate-on-inmate violence. Each was in a position to take steps to remedy these problems; each failed to do so.

42. As Commissioner, Defendant Ward is responsible for the supervision of operations at GDC facilities, including Georgia State Prison. Commissioner Ward knew about the inadequate mental health care being provided to inmates like Mosely with mental health problems; he was

notified by the 2018 GDC audit that inadequate treatment and deplorable conditions made violence by those with mental health problems more likely.  He took no steps to remedy the problem.

43. Commissioner Ward knew about the procedures that required officers at Georgia State Prison to make timely checks on inmates with histories of violence to ensure the inmates' safety.  Commissioner Ward is responsible for the failure of employees of the GDC who failed to ensure the safety of inmates who were in close confinement with inmates who present particularly high risk to the life, health, and safety of other inmates.

44. Defendant Bobbitt was aware of that the officers at Georgia State Prison were required to provide for the safety of inmates, specifically those housed with individuals who had a history of violence.  Defendant Bobbitt was responsible for ensuring officers under his supervision adhered to standards meant to ensure the safety of inmates at Georgia State Prison.  As Warden, Defendant Bobbitt was on notice of particularly dangerous offenders housed at Georgia State Prison, including prisoners that had a history of violent offenses and were found to be in possession of contraband.

45. Defendant Bobbitt knew that inmate Mosely had a history of possessing dangerous contraband, illegal narcotics, and assaulting other inmates; he knew that inmate Mosley had a history of mental health problems and that he had stabbed another cellmate earlier that year. He also knew that the mental health care in Georgia State Prison was inadequate and increased

the risk of inmate-on-inmate violence. He took no steps to remedy these problems.

46. As Deputy Warden of Security, Defendant Jackson shared responsibility for the day-to-day operations at Georgia State Prison. At the time of Mr. White's murder, Defendant Jackson knew that inmate Mosley was dangerous to other inmates due to his history of violence and possession of dangerous contraband. She was aware that inmate Mosley had a history of stabbing other inmates and had mental problems.

47. Defendant Jackson was also responsible for ensuring officers under her supervision maintained the safety of inmates by, among other things, ensuring that routine and timely checks on inmates were performed. Defendant Jackson's failure to ensure procedures aimed at inmate safety were followed demonstrated her deliberate indifference to a known danger to Mr. White and created a particularly dangerous situation which directly allowed inmate Mosely to repeatedly stab and kill Mr. White.

48. Defendants John DOE 1-10 were employees of the Georgia Department of Corrections. They were responsible for making cell assignments and ensuring that inmates' security levels were appropriately assessed. These Defendants were specifically aware of Mosley's violent history while incarcerated, drug abuse and use of homemade knives to attack other inmates unprovoked. These Defendants were deliberately indifferent to

Mosley's known risk to the safety of Mr. White but placed Mosley in the cell with White, anyway.

## COUNT ONE

Violation of Eighth and Fourteenth Amendments
To the United State Constitution and 42 U.S.C. § 1983
(All Defendants)

49. Plaintiff incorporates herein and re-allege, as if fully set forth herein, all factual allegations set forth in paragraphs 1-48.

50. Defendants were aware prior to Mr. White's murder that inmate Mosely had a history of mental instability, a history of possessing homemade weapons, and a history of assaulting other inmates, including those that he was bunking with. Each knew that Mosley posed a particular risk to an individual such as Mr. White, and yet they disregarded this known risk when they placed Mosely in the cell with Mr. White.

51. Defendants' decision to place inmate Mosely in the same cell as Mr. White was in direct contravention of prison policy requiring inmate Mosely be placed in segregation. By placing inmate Mosely in the same cell as Mr. White, Defendants knowingly and willfully placed Mr. White in imminent danger of bodily harm and death at the hands of inmate Mosely.

52. Defendants had a duty to ensure correctional officers routinely inspected the cells of individuals such as inmate Mosely with histories of violence. Defendants failed to train, equip, and direct the prison staff to perform this

15

duty.  As a direct consequence, inmate Mosely was able to hide the weapon he used to kill Mr. White.

53. Defendants John DOE 1-10 had a duty to routinely inspect the cells of individuals such as inmate Mosely with histories of violence.  Defendants John DOE 1-10 failed to discharge that duty.  As a direct consequence, inmate Mosely was able to hide the weapon he eventually used to kill Mr. White.

54. Defendants, including Ward, Bobbitt, and Jackson, were aware that Georgia State Prison was understaffed, that prison staff were failing to take the most basic steps to ensure the safety of inmates, and that inmates with mental health problems were being kept in conditions that worsened their propensity for violence, and that inmate-on-inmate violence was increasing as a result.

55. Defendants' policies, practices, acts, and omissions constituted deliberate indifference to a serious risk of harm to Mr. White and constitute clearly established violations of the Cruel and Unusual Punishments Clause of the Eighth Amendment, made applicable to the States through the Fourteenth Amendment to the United States Constitution.  As a proximate result of Defendants' illegal and unconstitutional acts and omissions, Mr. White was left unprotected and murdered.

56. The Defendants acted with deliberate indifference to the safety of Mr. White. As a consequence, Mr. White was incarcerated under conditions posing a substantial risk of serious harm.

57. The above-described actions were deliberate and in reckless disregard of the constitutional rights of Mr. White. Defendants' conduct warrants an award of punitive damages in an amount to be determined at trial.

58. Defendants' deliberate policies, practices, acts, and omissions created the conditions in which Mr. White's murder was foreseeable. As such, Plaintiff is entitled to an award in the amount of the full value of life of Mr. White.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

(a) Assume jurisdiction over this action.

(b) Grant Plaintiff a trial by jury.

(c) Declare that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States and the state of Georgia.

(d) Enter judgment in favor of Plaintiff and against each Defendant for all damages allowed by law, including, but not limited to:

- The full value of Mr. White's life.

- Pain and suffering.

- Nominal damages.

- Punitive damages.

(e) Award Plaintiff the costs of this lawsuit and reasonable attorney's and

expert fees and expenses pursuant to 42 U.S.C. § 1988(b) & (c) and as

otherwise allowed by law; and

(f) Order such additional relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff respectfully demands a jury trial.

Date: February 18, 2022.

Respectfully submitted,

*/s/Tanya F. Miller*
Tanya F. Miller (GA Bar No. 508434)
DuBose Miller LLC
75 14th NE, Suite 2110
Atlanta, GA 30309
Telephone: (404) 720-8111
Fax: 404-921-9557
miller@dubosemiller.com
Attorney for Plaintiff